And Mr. Rand Lewis, you're remote, but you may proceed. Yes, good morning, Your Honor. May it please the Court, Timothy Rand Lewis, on behalf of the appellants. I appreciate the Court's granting my request to appear remotely at the proceedings today. I would like to reserve five minutes of my time, at a minimum, for rebuttal. This case presents several issues. The primary issue, which will resolve all the other issues, is the fact that the District Court had no jurisdiction over this case to begin with. The case was filed. There was no complete diversity of citizenship between the plaintiff and the defendants, specifically Letitia Palms and the Palms Insurance Agency. The District Court made an erroneous ruling when it determined that Palms was a sham defendant and dismissed her and the insurance agency from the case. The facts and the allegations of the complaint established that the insurance agent and agency, excuse me, and Ms. Palms acted as the plaintiff's insurance broker, consulted with him, instructed him on the appropriate insurance policy to obtain, and further indicated that they would assist him with any claims and any issues that he had with the policy going forward. The District Court ignored that, relied solely upon a self-serving declaration by Ms. Palms that stated that she was only an agent for Allstate, which declaration was contradicted by her license with the California Department of Insurance that established that she is an agent and a broker. So the District Court's error in determining that there was complete diversity of citizenship. What were the substance of the allegations against her? The substance of the allegations against her were that she failed to provide appropriate assistance with the policy that she had indicated to Mr. Infanzon that she would. She failed to provide assistance with this claim when the accident occurred, which she had represented that she would also do. Because there was no complete diversity of jurisdiction, or excuse me, of citizenship, the District Court never had jurisdiction over the case, and it should have been remanded back to the District Court. Were there substantive allegations in the complaint about her refusal or inability or reluctance or just shining him off? I don't recall the specific allegations that were in the complaint at this time, Your Honor. I do know that there were allegations that when he was involved in this accident, he did reach out to the Palms Agency for assistance with submitting his unassured motorist claim. And if I recall correctly, I believe there was basically no response whatsoever, despite their prior representations that they would be available to assist. I may be mistaken, but I thought at some point he was directed to file a claim with a, what do they call them, a claims adjuster? He did file the claim with the claims adjuster, and he did proceed, obviously, with the U.M. claim directly with Allstate. However, there are allegations in the complaint that the representations by Palms to be available for assistance were not correct. They were not complied with. So her failure to provide assistance is what, a negligence claim? I believe negligence was one of the causes of action against her, Your Honor. So what duty did she owe, apart from her role in the company as an agent, to sustain a negligence claim? She had a duty to Mr. Infanzon to comply with her representations, to comply with her obligations and provide him with the services that she had indicated she would provide, which is not only obtaining him an appropriate insurance policy that would provide him the coverage that was necessary, but also to provide him with the assistance with any claims or any other issues that he may have with the policy during the period that he was insured. All of this took place under his uninsured motorist coverage. Is that correct? That is correct. That is correct. So what your claim is, is that she didn't advise him to take more coverage for uninsured motorist protection? Is that what the claim is? No, that is not the claim. The claim is that – I'm sorry. I'm trying to pull up the complaint right now while we're speaking. The claim is that with regard to the insurance agent, she was obligated to assist him with any claims he had under the policy and to communicate with him regarding – with the correct policy that would protect his interests. I don't believe I said that. If I did, I misspoke. What I indicated was that the allegations of the complaint were that she was acting as his broker to advise him and represent him as to what the best insurance policy would be for him to obtain the coverage necessary and also to provide him with appropriate protection as needed. There's not an allegation that she did not provide or that he did not obtain an appropriate policy with the appropriate level. Did he ask for a particular type of policy? He relied upon her expertise to provide him with the information as to what type of policy he should obtain. But, again, there was no issue with regard to the policy limits or anything of that nature with regard to misspokes. Moving on from the jurisdictional issue, assuming arguendo that the district court did have jurisdiction, when it ruled upon the summary judgment motion, it ignored several tribal issues of fact, which mandated that the motion be denied. The primary issue is the district court determined that it was undisputed that the insurance company requested medical authorizations from Mr. Infanzon and that he never provided those authorizations. However, that fact was expressly disputed by Mr. Infanzon's evidence. Did he actually provide the medical authorization forms? They were never requested, to my knowledge, and the declaration of Mr. Infanzon's counsel, which was submitted in opposition to the summary judgment motion, specifically indicated that those were never requested throughout the entire proceedings. There was never any follow-up by Allstate requesting them or asking where they were and, in fact, Allstate's claim file reflects that the insurance company had all of his medical information and the adjuster had reached out and contacted his doctors directly to get all of his billing information. And so there was a tribal issue on that, whether or not those medical authorizations were provided, which mandated that the district court deny the motion. Additionally, there was a tribal issue as to whether the fact that the primary adjuster on the file stopped working on it and did absolutely nothing for a period of 71 days after Mr. Infanzon's counsel requested that she have her supervisor start communicating directly with Mr. Infanzon's counsel and handling the matter. She essentially stopped working on the file and did absolutely nothing for a 71-day period. Allstate never notified Mr. Infanzon that there was any issue with regard to the adjuster ever provided and with any information as to why there was absolutely nothing going on during that 71-day period. So there was an unreasonable delay and Allstate provided the declaration of that adjuster who indicated she had quote-unquote personal issues that required her to take the time off. But, again, that's a disputed issue of fact that mandated that the motion be denied. Also, there was no genuine dispute over the amount of damages that Mr. Infanzon was required. Allstate's adjuster was improperly claiming that Mr. Infanzon is a Medi-Cal recipient, which he was not, and that the Howell factors applied to reduce the amount of damages he was entitled to claim. Did you want to save five minutes? I do. Let me wrap up briefly and then I'll save whatever time I have left. I'll move on to the sanctions issue. The sanctions issue we set out quite thoroughly in our briefing, but I do want to stress two points. One, the amount that was excessive that was clearly established by the fact that Allstate initially requested a total of $4,000 in the motion to compel, and then the magistrate judge awarded multiple times that amount. Also, the fact that when reading the magistrate judge's order in its entirety and the tone and tenor of the order, it was clearly intended to punish Mr. Infanzon's counsel for what the magistrate judge believed to be insolence and failure to comply with his order to provide unredacted medical records, when in fact the district court judge's order, Judge Cronstadt's order, indicated that the records could be provided in a redacted form. And with that, I would reserve my remaining time for rebuttal. Thank you. All right. Thank you, counsel. Good morning. May it please the Court, Scott Spaslovsky for appellees. Good morning. I'd just first like to ask if the panel has any questions for me or if there are any arguments by counsel that you'd like me to address. The medical authorization issue, from your perspective, what are the undisputed facts? The Allstate adjuster submitted a declaration attesting to the fact that she sent the medical authorization form to Infanzon's counsel. That was a fact that was stated in our separate statement of undisputed facts, which went unrebutted. Infanzon did not submit a statement of genuine issues. Under the rules and affirmed by the district court, the district court was not required to look any further than the separate statement to determine those undisputed facts. The court was well within its right to conclude that that was unrebutted. Let me ask you this. Counsel started off with the removal and the district court's dismissal of the agent as an improperly named defendant solely for the purposes of destroying diversity. What's your response to his argument? The court found that Infanzon failed to present any evidence to show that there was a broker or any kind of special relationship. The only evidence presented by the time of the hearing on the motion to remand was a declaration from the agent who said, I never served as a broker. I've always been an Allstate agent, a sales agent. I did not have a contract with Mr. Infanzon. And so that evidence went unrebutted at the time that the court ruled on the motion. They didn't present any evidence to show any kind of special relationship, any kind of evidence to show that she acted instead as a broker rather than a disclosed Allstate agent. So they didn't present any evidence that she had a broker's license and that she was hanging her hat as an agent. She also had a broker's license and had the authority to act as a broker? The only thing that they submitted was a printout from, and I can't remember which website, but it said broker agent on the printout. But that doesn't mean she was serving as Mr. Infanzon's broker. It means that maybe she could theoretically act as a broker in some other capacity for some other client, but that doesn't mean she acted as a broker for Mr. Infanzon, and that's important because she explained that she was a sales agent at all times. She held herself out as a sales agent with an Allstate email address, with a business card, and at all times represented herself as an Allstate agent, not as a broker. So that allegation, and it's nothing more than an allegation, was never supported by Mr. Infanzon. I'm curious. The settlement from the arbitration proceedings for $50,000, there was no release of claims provision in that settlement agreement, or was there? That's a good question. Initially, we had requested a release. Infanzon's counsel objected to that, and so we agreed you don't have to sign a release, paid the money that he was demanding under the policy, and that was it. I mean, we wouldn't be here if there had been a release of claims. That's correct. If there was a release, well, if there was a release of all claims which would include any kind of claim for breach or bad faith or anything, if he did, in fact, sign a release at that time, which Allstate did not require. The $50,000 was the policy limit. That's correct. For uninsured motorist coverage. That's correct, Your Honor. Thank you. What about counsel's contention that Allstate only asked for $4,000 for sanctions and the magistrate brought it up to $38,000? What happened there? Yeah, and that's a long, detailed history spanning a six-month period. When I initially filed the request for sanctions, it was at that time only $4,000. But over that six-month period, I then had to file successive motions for reconsideration, a request for independent discovery conference I had to respond to, and an order to show cause why infants on this council should not be reported to the state bar. There were all these events that took place over a six-month period, so by the time that we got to the magistrate judge's order, Allstate had already spent over $40,000. To support that, I submitted redacted fee statements, fee statements that showed all the time that I spent or that any of my associates spent in connection with really trying to get basic discovery responses, documents, and a privilege law, which were never provided. And so we supported that by saying, look, look, and I acknowledged the question. I understand that this is a large amount, but it is the amount that Allstate incurred, paid, and should never have had to pay in the first place to deal with the intransigence, the lengthy period of time that it took us to get simple discovery, simple questions like, I want the documents to support your claim. Tell me the facts that support your claim. If you're claiming attorney's fees, give me the basis for that. You're withholding documents on privilege? I'd like a privilege law. I'd like to be able to know what you're withholding. What did they produce at the early meeting conference where you're supposed to exchange documents under the rules? Nothing, Your Honor. They did not provide anything pursuant to Rule 26. My recollection is I did not get a statement, disclosure, initial disclosure statement, nor did I receive any documents. So I had to serve discovery, and I served it early, thankfully. But it took six months to be able to get responses to discovery, and that was only after they had violated the magistrate judge's numerous orders. The magistrate gave them the benefit of the doubt over and over and over and over again, multiple times to cooperate, multiple times to just give basic discovery responses. So did you ever find out what other damages Mr. Infanzon was claiming from this accident? No. In fact, that was one of the additional basis that we moved for summary judgment on the remaining bad faith claim is because there was no evidence of any damages resulting from anything that Allstate did. That's a finding that the district court made that went unrebutted and not even addressed on appeal. That was an essential element for their cause of action for breaching the implied covenant of good faith and fair dealing, no evidence of actually any damages. They didn't submit in response to our summary judgment. They submitted only counsel's declaration. They never even submitted a declaration from Mr. Infanzon attesting to the fact that, okay, here are the damages I'm claiming. It was never addressed. And so that was an additional basis that we moved for summary judgment. No further questions. Okay, thank you. I'll just submit on the briefs then, Your Honor. Thank you so much. Thank you, counsel. Ivanka, was there time left? Okay, yes. Okay, you have three minutes. Thank you, Your Honor. I'd just like to make a couple of quick points. And in reference to the question regarding whether there was a release of claims that was signed when the underlying policy limits were paid, the reason why there was no release of claims signed is California Code of Regulations, Section 11580.2, subsection H, specifically states that an insured is entitled to recover under uninsured motorist coverage without being required to sign any release. So Mr. Infanzon's settlement of the underlying U.M. claim was not subject to a release. And one of the allegations of the complaint was that all states demand that he sign a release before they would release the policy coverage or the policy limits was in bad faith. And with regard to the sanctions, as we set forth in our reply brief and further to counsel's argument that they provided the court with detailed invoices of time, those invoices established that with regard to the order to show cause that the magistrate judge had set, counsel spent or billed a total of 3.1 hours, but the magistrate judge's order awarded them 13.9 hours. So clearly the order was excessive and it was not supported by any competent evidence and it should be reversed. And with that, I thank you for your time. And, again, I thank you for permitting me to appear remotely for today's proceedings. Thank you very much. All right, thank you very much, counsel. Infanzon v. Allstate Insurance Company will be submitted.
judges: WARDLAW, PAEZ, SANCHEZ